# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARBI KAMALI,<br><br>           Plaintiff,<br><br>    v.<br><br>ROSE STEVENS, et al.,<br><br>           Defendants. | Case No. 1:19-cv-01432-LJO-BAM (PC)<br><br>SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE AMENDED COMPLAINT<br><br>(ECF No. 1)<br><br>**THIRTY-DAY DEADLINE** |

Plaintiff Arbi Kamali ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action under 42 U.S.C. § 1983. Plaintiff initiated this action on October 2, 2019, and the matter was transferred to this Court on October 11, 2019. Plaintiff's complaint, filed on October 2, 2019, is currently before the Court for screening. (ECF No. 1.)

**I.    Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

## II. Plaintiff's Allegations

Plaintiff is currently housed at the California Correctional Institution in Tehachapi, California. The events in the complaint are alleged to have occurred while Plaintiff was housed at Kern Valley State Prison ("KVSP") in Delano, California. Plaintiff names the following defendants: (1) Officer Rose Stevens; (2) Officer Ivan Villegas; (3) Officer Jordan Bryan; and (4) Officer Allen Hernandez.

In Claim I, Plaintiff alleges that on January 21, 2018, while in the KVSP C-Visiting processing area, after visits were over, Defendants Stevens, Villegas, Bryan and Hernandez used excessive force leaving Plaintiff with serious injuries. Plaintiff alleges that he was kicked and punched in the face and head and was struck with metal batons while he was on the floor in handcuffs and leg restraints. Plaintiff claims that he was beaten beyond recognition and left with major abrasions, active bleeding, and cuts and lacerations on his head and face. When Plaintiff got out of the x-ray, he got on the floor in front of the x-ray. Officer Solis and Defendant Villegas were on Plaintiff's back, trying to put him in handcuffs. Plaintiff asserts that Defendant

Stevens then started punching his head when she felt that Plaintiff was not giving Officer Solis and Defendant Villegas his hands. Defendants Stevens started kicking Plaintiff's head and then Officer Villegas started hitting Plaintiff with his metal baton. Officer Solis then told them that it was enough and to stop. Plaintiff then blacked out and was awakened by Defendants Bryan and Hernandez slapping him. Plaintiff was in handcuffs and leg restraints. When he opened his eyes, he told them to stop slapping him. Defendant Bryan then punched Plaintiff and Defendant Hernandez participated. They gave him another beating, yelling at Plaintiff to stop resisting. Plaintiff was on the floor and in handcuffs and leg restraints. Plaintiff then heard someone say to push the alarm and make sure you spray him first. Defendants Bryan and Hernandez stopped kicking Plaintiff, he was sprayed in the face and then the alarms went off.

After the alarms, Plaintiff asserts that there were over 20 officers around him. One of the officers asked Defendant Stevens if he called the front gate to stop Plaintiff's family from leaving the prison grounds. Defendant Stevens said that when she called, Plaintiff's family had already left the prison. Plaintiff contends that this means the beating he received took more than 30 minutes because his family had told him that it takes over 30 minutes to visit him and leave the prison grounds.

Plaintiff asserts that the force used by defendant left him with a permanent scar on the left eye brow and damage to his left ear in the form of hearing loss requiring the permanent use of a hearing aid. Plaintiff further asserts that the medical report of his injury shows the injuries that he suffered from the use of force. Plaintiff contends that defendants attempted to conceal the misconduct by not documenting that they all hit him or the severity of the incident and Plaintiff's injuries.

Following the incident, Defendant Bryan had Plaintiff remove his clothes and boxers because they were part of the evidence. Defendants Bryan and Hernandez then walked Plaintiff nude onto the KVSP C-patio. Plaintiff claims that he was forced to walk nude in handcuffs approximately 40 to 50 feet to wash his face from a garden hose. Plaintiff claims this violated his due process rights and caused him embarrassment. According to Plaintiff there were women, nursing personnel, sergeants and lieutenants around him, but no asked why he had no clothes on

and no one was disciplined for making Plaintiff walk in the nude. Plaintiff subsequently was given boxers and ordered by KVSP doctors to be transported to Delano Regional Medical Center for evaluation of his injuries.

In Claim II, Plaintiff alleges that on January 21, 2018, Defendants Stevens, Villegas, Bryan and Hernandez used threats of physical violence to stop Plaintiff from reporting what happened when he arrived at Delano Regional Medical Center and from receiving adequate medical care. Before Plaintiff left the C-Visiting processing area to go to C-Yard medical, Defendant Stevens, Villegas, Bryan and Hernandez told Plaintiff to keep his mouth shut. Defendant Stevens said, "You better not say [expletive] or els[e] you know what's going to happen to you when you go to the hole/ASU." (ECF No. 1 at 4.) Defendant Villegas reportedly said, "Kamali I have partners that work in ASU so keep you mouth shut or els[e] we will beat you [expletive] again." When Defendant Bryan and Hernandez were escorting Plaintiff, Officer Bryan said, "When you get to C-Yard medical to do you CDCR-7219, don't say anything and do the same at triage (TTA)." When Plaintiff asked Defendant Bryan what he should say about where his injuries came from if he is sent to an outside hospital. Defendant Hernandez told Plaintiff to say that he fell. Defendant Hernandez also told Plaintiff that he better not say anything and if he did, then he would beat Plaintiff so bad that he would need to be airlifted to the outside hospital.

Plaintiff stayed at the outside hospital for hours. He queries what possible reason he would have to refuse pain medication and medical treatment or lie about his injuries. At the hospital, Plaintiff was reminded by KVSP officers to say that the laceration to his face was due to falling. Plaintiff did what he was told, and it was documented at Delano Regional Medical Center that the laceration and the CT-Head Scan were due to Plaintiff falling. Plaintiff claims that the injuries he suffered did not and could not be sustained from him falling or being taken down to the ground one time by officers. Due the defendants' threats, Plaintiff lied because he did not want another beating. Plaintiff posits that if he had told the truth about his injuries, then he might not have lost hearing in his left ear.

As relief, Plaintiff seeks compensatory and punitive damages, along with injunctive relief.

4

**III.    Discussion**

**A.    Eighth Amendment – Excessive Force**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832–33 (1994) (quotations omitted).

For claims of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. Relevant factors for this consideration include "the extent of injury. . . [,] the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Id. (quoting Whitley v. Albers, 475 U.S. 1078, 1085 (1986)).

Although Plaintiff's complaint alleges excessive force by defendants, these allegations are contradicted by the exhibits attached to his complaint. A court is not required to accept as true allegations that are contradicted by the exhibits attached to the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Here, the exhibits appear to suggest that officers applied force in an effort to maintain or restore discipline. In particular, a Rules Violation Report for the date of the incident provides as follows:

> On January 21, 2018, at approximately 1401 hours, Correctional Officer I. Villegas working as Facility C visiting officer #3, he was assisting in processing the inmates back to Facility C after visiting hours were completed. Utilizing the Low Dose Body Scanner Correctional Officer R. Stevens had detected a foreign object near the buttocks area of inmate Kamali's . . . . Correctional Officer R. Stevens requested Correctional Officer M. Solis to review the Low Dose Body scanner to confirm what she had observed. Solis asked Kamali to step down from the low dose Body Scanner and to prepare for a clothed body search. Villegas observed Kamali become nervous and reach his hands into the back side of his pants and pull his hands out. Solis and Villegas grabbed his arms as he turned around simultaneously bringing his hands up to his chest. Villegas could see something in his hands as he took a step towards the restroom and began swinging his elbows side to side and Villegas stated he believed the inmate was trying to

5

get to the restroom to destroy what was in his hands. The Officers used their combined weight to take the inmate to the ground. Villegas landed on his knees and left wrist breaking helping to break the fall. Villegas pressed his Personal Alarm Device and continued to try and gain control of the inmate. The inmate was still throwing his elbows from side to side and struck Villegas on the lower left side of his mouth. Kamali had broken open the contraband and appeared to be trying to swallow it and scatter it everywhere. The white powder like substance got in the mouth of Villegas as he struggled to maintain his grasp on the inmate. Officer Stevens said "I'm going to spray you," and sprayed the inmate in the facial area. It did not have the desired effect but it did cause the inmate to begin spitting out the white powdery substance he was trying to swallow. Facility C responding staff arrived and the inmate was restrained.

(ECF No. 1 at 23.) A test of the suspected narcotics using a Narcotics Identification Kit indicated that it was "presumptive positive for Methamphetamine." (Id.) According to an additional exhibit attached to the complaint, Plaintiff subsequently admitted that he "swallowed one ounce." (Id. at 26.) Taken together, these exhibits contain factual allegations that undermine Plaintiff's excessive force claim. Plaintiff will be granted leave to amend this claim to the extent he is able to do so in good faith.

**B.  Privacy**

Plaintiff asserts that being forced to walk nude in public while handcuffed approximately 40 to 50 feet to wash his face from a garden hose violated his due process rights and caused him embarrassment. The Court does not construe these allegations as a due process issue, but rather as an assertion that Plaintiff's right to bodily privacy under the Fourth Amendment was violated.

The Fourth Amendment applies to the invasion of bodily privacy in prisons. Bull v. City & County of San Francisco, 595 F.3d 964, 974-75 (9th Cir. 2010) (en banc). The Ninth Circuit has recognized that "incarcerated prisoners retain a limited right to bodily privacy." Michenfelder v. Sumner, 860 F.2d 328, 333 (9th Cir. 1988). "Shielding one's unclothed figure from the view of strangers, particularly strangers of the opposite sex is impelled by elementary self-respect and personal dignity." Id. Nevertheless, the Ninth Circuit has held that occasional viewing of unclothed male prisoners by female correctional officers does not violate the Fourth Amendment rights of the inmates. Id. at 334; see also Grummett v. Rushen, 779 F.2d 491, 494-95 (9th Cir. 1985) ("infrequent and irregular" viewing of prisoners of the opposite sex by guards was not sufficient to support a claim); Johnson v. Frauenheim, No. 1:18-cv-01477-AWI-BAM (PC),

2019 WL 5260447, at *13 (E.D. Cal. Oct. 17, 2019) (finding prisoner failed to allege a cognizable Fourth Amendment claim based on allegations that the prisoner was ordered to take his boxers off while a female officer was able to view the prisoner's body search).

Plaintiff claims that by having to walk naked approximately 40 or 50 feet to wash himself with a garden hose, he was forced to expose himself to women, nursing personnel, sergeants and lieutenants. Plaintiff's allegations suggesting that this violates his right to privacy fail to state a Fourth Amendment claim. The allegations are limited to a single incident and the removal of Plaintiff's clothing resulted after he was exposed to spray and to fine powder from alleged methamphetamine. (ECF No. 1 at 23.) Plaintiff admits that his clothing was taken as evidence. Plaintiff also was subsequently provided boxers and taken to the Triage and Treatment Center for evaluation.

**C.     First Amendment**

Although not entirely clear, it appears that Plaintiff's First Amendment claim is based on his allegations that defendants threatened him with harm if he told anyone about the alleged beating or how he sustained his injuries. Mere threats do not rise to the level of a constitutional violation, even if the threats are for the purpose of deterring access to court. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir.1987) (when guards beat a prisoner and then threatened him with bodily harm to deter him from pursuing legal redress for beatings, the threats did not give rise to constitutional claim).

Accordingly, plaintiff's allegations that defendants threatened him with harm if he complained about being beaten by them do not give rise to a constitutional claim. See Baculanta v. Baily, No. CV 12-08467-DMG (MAN), 2012 WL 5456395, at *3 (C.D. Cal. Nov. 7, 2012) (finding allegation that defendants threatened prisoner with harm if he complained about being beaten by them did not give rise to a constitutional claim).

**D.     Injunctive Relief**

Insofar as Plaintiff seeks injunctive relief against prison officials, any such request is now moot. Plaintiff is no longer housed at the Kern Valley State Prison, where he alleges the incidents at issue occurred, and where the prison officials are employed. Therefore, any injunctive relief

against officials at Kern Valley State Prison is moot. See Andrews v. Cervantes, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007) (prisoner's claims for injunctive relief generally become moot upon transfer) (citing Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable expectation of returning to [the prison]")).

**IV.    Conclusion and Order**

For the reasons stated, Plaintiff's complaint fails to state a cognizable claim for relief. As Plaintiff is proceeding pro se, the Court will grant Plaintiff an opportunity to amend his complaint to cure the above-identified deficiencies to the extent he is able to do so in good faith. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cty., 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1.    The Clerk's Office shall send Plaintiff a complaint form;

2.    Within thirty (30) days from the date of service of this order, Plaintiff shall file an amended complaint curing the deficiencies identified by the Court in this order or file a notice of voluntary dismissal; and

3.    If Plaintiff fails to file an amended complaint in compliance with this order, the

8

Court will recommend dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim.

IT IS SO ORDERED.

Dated: **January 27, 2020**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE