UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARBI KAMALI,<br><br>            Plaintiff,<br><br>     vs.<br><br>STEVENS, et al.,<br><br>            Defendants. | 1:19-cv-01432-NONE-GSA-PC<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE PROCEED AGAINST DEFENDANTS ROSE STEVENS, IVAN VILLEGAS, JORDAN BRYAN, AND ALEN HERNANDEZ FOR USE OF EXCESSIVE FORCE AND RETALIATION; AND THAT ALL OTHER CLAIMS BE DISMISSED FOR PLAINTIFF'S FAILURE TO STATE A CLAIM**<br>**(ECF No. 13.)**<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

**I.      BACKGROUND**

Plaintiff Arbi Kamali ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983. On January 27, 2020, the Court screened Plaintiff's Complaint and granted him leave to amend. (ECF No. 11.) Plaintiff's First Amended Complaint, filed on February 27, 2020, is currently before the Court for screening. (ECF No. 13.)

**II.     SCREENING REQUIREMENT**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

### III.     SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently housed at the California Correctional Institution in Tehachapi, California. The events at issue in the First Amended Complaint allegedly took place at Kern Valley State Prison (KVSP) in Delano, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff names as defendants Correctional Officers Rose Stevens, Ivan Villegas, Jordan Bryan, and Alen Hernandez (collectively, "Defendants"). A summary of Plaintiff's allegations follows:

**Claim #1 – Excessive Force**

On January 21, 2018, at KVSP's C-Visiting processing area at 14:01 hours after visits were over, defendant C/O R. Stevens asked Plaintiff to be x-rayed so he could be sent back to his

housing.  When the x-ray was done, C/O M. Solis [not a defendant] asked Plaintiff to get on the wall for a pat-down, but Plaintiff got down on the floor with his arms under his chest.  The next thing Plaintiff felt was C/O M. Solis and defendant C/O Ivan Villegas jump on his back.  Each of them grabbed one of Plaintiff's arms and tried to put him in handcuffs.  Out of nowhere, defendant C/O Stevens started kicking Plaintiff in the head/forehead, then got on her [Stevens] knees and started punching Plaintiff in the face.  Immediately, defendant C/O Villegas withdrew his metal baton and started hitting Plaintiff on the right side of the back of his head eight to ten times.  C/O Solis was on Plaintiff's back on the left side and Plaintiff heard Solis tell defendants Stevens and Villegas to stop, it's enough.  Then everything went dark and Plaintiff lost consciousness.

When Plaintiff came to he was in the corner of the visiting area, defendant C/O J. Bryan was slapping him and Plaintiff was in tight handcuffs and leg restraints.  When he opened his eyes and saw who was slapping him, Plaintiff told him to stop.  Out of nowhere, defendant C/O Bryan's slaps turned into punches and defendant C/O Hernandez punched Plaintiff in the face. They continued beating Plaintiff and yelled at him saying, "Stop resisting."  (First Amend Comp, ECF No. 13 at 4.)  Plaintiff yelled back, "I'm not resisting, I'm in handcuffs."  (Id. at 4, 6.)  Then defendant Bryan picked Plaintiff up and slammed him head first into the floor of the C-Visiting area right in front of the x-ray.  Plaintiff was on his stomach and started to bleed all over the floor.  Defendant Hernandez walked up to him and gave him three to four kicks to the left side of his face and ear, penetrating his ear.  Plaintiff lost his hearing and could no longer hear out of his left ear.  He felt a pop in his ear and started bleeding all over the floor from the left side of his face and mouth.

Defendant Bryan starting laughing.  Plaintiff heard an officer tell defendant Villegas to push the alarm, but make sure you spray him first.  Defendant Stevens walked up to Plaintiff's head, lifted it and sprayed his face, and the alarm went off.  A group of officers responded, including ISU (Investigative Service Unit) B. Long [not a defendant], who asked defendant Stevens, "Did you call the front gate to stop inmate Kamali's family from leaving the prison grounds?"  (Id. at 6:17-19.)  Stevens responded that when she called, the family had left.  Visiting

hours at KVSP start at 8:30am and end at 14:00pm.  It takes visitors 20 minutes to arrive inside the visiting room from the front gate and over 20 minutes to leave the prison grounds.  If the time of the incident – 14.01 -- is correct, Plaintiff's family would still be on prison grounds.

Sergeant S. Herrera [not a defendant] instructed defendants Bryan and Hernandez to take Plaintiff to Medical, and the medical staff ordered that he be taken to TTA for further evaluation due to his injuries.  At TTA Medical, medical staff ordered Plaintiff to be taken to an outside hospital, Delano Regional Medical Center (DRMC), for a CT-Head Scan after which he was sent back to KVSP.

On January 25, 2018, Plaintiff's birthday, he attempted suicide by overdosing on pills and was taken in an ambulance back to DRMC.  His suicide attempt was caused, in part, by the embarrassment and humiliation he felt at having his pants and underwear pulled down by defendants Bryan and Hernandez in front of female staff and other inmates.  Defendants failed to report Plaintiff's injuries or the blood on the floor.  Instead, they acted maliciously and sadistically, outrageously, and carelessly.  The injuries Plaintiff suffered by the Defendants – cut, laceration, active bleeding, abrasion, reddened area, left cauliflower ear, and loss of hearing – could not have been sustained from M. Solis and defendant Villegas taking him to the ground one time as they said in their Incident Reports.  The beating Plaintiff received for up to fifteen minutes was very sadistic, and the pictures of Plaintiff's forehead and left ear, and the amount of Plaintiff's blood on the floor speaks the truth and establishes that his injuries came from excessive force by the Defendants.  The lack of detail and lies in Defendants' Incident Reports were only for the D.A. to see their side only and pick up the case.  The Superior Court did file a felony complaint against Plaintiff on September 20, 2018.  What was done to Plaintiff by all of the Defendants was wrong and very excessive.

**Claim #2 – Fourth Amendment – Bodily Privacy**

On January 21, 2018 at KVSP at 14:01 in C-Visiting, Sergeant Herrera [not a defendant] instructed defendants Hernandez and Bryan to escort Plaintiff to be searched, decontaminate him, and escort him to Facility-C Medical to be searched.  At the C-yard patio door, ISU Brandon Long [not a defendant] stopped them and told defendants Bryan and Hernandez to remove

Plaintiff's boxer shorts as part of the physical evidence that Long needed to collect before the decontamination on the patio.  On the patio defendants Bryan and Hernandez sat Plaintiff down and told him, "Kamali, sit down, I'm going to take your leg restraints off, you better not kick me."  (Id. at 4.)  Plaintiff said, "I won't."  (Id.)  Defendant Hernandez stepped on Plaintiff's left foot and the chain and defendant Bryan opened the right leg restraint, told Plaintiff to lift his ass off the floor, pulled off Plaintiff's boxers completely, and gave them to defendant Hernandez.  Defendant Bryan put the leg restraint back on.  Plaintiff asked Bryan to cover him, and Bryan said no.  Plaintiff told defendant Bryan, "I'm bleeding really bad, please put something on my face."  (Id. at 5.)  Bryan said, "No, be a man," and Villegas said, "Kamali, you know what time it is, keep your mouth shut."  (Id.)

Defendant Stevens told Plaintiff not to say anything or else something would happen to him when he goes to the hole (they have partners that work in there), "so keep your mouth shut or I'll let them know to beat your ass."  (Id.)  Defendants Bryan and Hernandez forcefully picked Plaintiff up and escorted him nude from the C-yard patio to Medical.  During the escort, defendant Bryan told Plaintiff not to forget what to say when they got to Medical and to Triage (TTA).  Plaintiff asked defendant Bryan what he wanted Plaintiff to say.   Bryan told Plaintiff to say that he fell, and do the same if they sent him to an outside hospital.  Hernandez told Plaintiff, "You better listen to my partner and not say shit and remember where I'm at and remember when I come back they will check in on what you said."  (Id. at 9.)   If he said anything, they would have his ass beaten so badly that he would have to be airlifted.  Plaintiff said okay, because he has seen what KVSP officers do to inmates who tell the truth about officers beating them up.  At Medical, Plaintiff was still nude with only his blue shirt in his hands and leg restraints and forced to walk roughly 50 feet on the C-Patio to wash his face with a garden hose.  KVSP C-yard does not have a real decontamination area for removing O/C spray from inmates' eyes and body.  Defendants Bryan and Hernandez escorted Plaintiff to a wall and told him to get on his knees, so he did.  Defendant Bryan told Plaintiff he was going to leave the handcuffs on and hose Plaintiff's face down with water, so defendant Bryan started forcefully spraying Plaintiff's face really hard with cold water.  Plaintiff told him to stop because it was hurting him.  Defendants Bryan and

Hernandez started laughing at Plaintiff.  When Plaintiff said, "Please know I'm actively bleeding from my face from cut/laceration/slash," the spraying and laughing stopped.  (Id. at 9:23-34.)

Defendants Bryan and Hernandez lifted Plaintiff up, walked him into C-Medical, and put him in a holding cage.  They uncuffed Plaintiff's hands, took his blue shirt and performed an unclothed body search, but left on the leg restraints.  When Bryan was done Plaintiff asked him if he could get some pants or boxers, and he said no, you have to be evaluated by Medical.  A female nurse, LVN Hernandez [not a defendant], came at 14:23, wrote up a CDCR 7219 medical report of injury, and sent Plaintiff to KVSP TTA for further evaluation due to his injuries.  After the nurse was done defendant Bryan told Plaintiff to turn around and cuff up.  Plaintiff told Bryan to give him the boxers first.  Bryan told Plaintiff to cuff up and he'll get the boxers because he had to take off the leg restraints, so Plaintiff did what he was told.  Then defendant Hernandez came to the holding cage and said to Plaintiff, "So, Kamali, you're still resisting." (Id. at 10:9-10.)  Plaintiff said no.

Defendant Hernandez told Plaintiff to turn around and face away from them, and when he opened the cage door, not to move.  When the cage door opened defendant Hernandez pushed and slammed Plaintiff's face hard to the back of the cage and told him to follow orders, listen to him and his partners, and not to resist or else he would fu** Plaintiff up.  He backed off and told Plaintiff to sit down in the cage and he did the same thing.  He stepped on the chain and on Plaintiff's left foot, undid Plaintiff's right leg, threw the boxers at his feet and told him to put them on.  Plaintiff told him he couldn't do it because he was in handcuffs.  Defendant Hernandez stepped off of Plaintiff and told him to use his feet to put them on, so Plaintiff did his best using only his feet and got the boxers past his ankles.  Hernandez said to stop and Plaintiff did.  Hernandez stepped into the cage and, again stepping on the chain and Plaintiff's left foot, put the leg restraint back on Plaintiff's right leg, backed off, and told Plaintiff to "stand and shoot" the cage door. (Id. at 10:22.)  So Plaintiff used the cage and his fingers to pull up his boxers.

Defendants Bryan and Hernandez escorted Plaintiff from C-yard to KVSP TTA because he required a higher level of care due to his injuries and needed to be evaluated to be transported to an outside hospital,.  When Plaintiff was being escorted by Bryan and Hernandez, they told

him not to forget what C/O Stevens and Villegas had told him.  Bryan said, "Kamali, don't forget who I am and who my father is." (Id. at 11:2-3.)  Plaintiff told him, "I know about your father," and C/O Hernandez told him to make sure to keep all that in mind and be a good boy and not say shit and act like a man and not like a little girl.  (Id. at 11:3.)  Plaintiff said, "I understand -- 'I fell'" -- and they both said good boy. (Id. at 11:5-6.)  When they got to the TTA, the doctor looked at Plaintiff and said he needed to be sent to the outside hospital for a cat-scan of his head, so Plaintiff was put in a car and two officers escorted him to Delano Regional Medical Center.  Plaintiff was reminded by the officers about their partners' threats.  When they got to the emergency department, a nurse asked Plaintiff what happened to him and he told her, "I fell."  (Id. at 11:12.)  She asked him why all the inmates from KVSP say their injuries came from falling.

Plaintiff told the hospital staff he did not want any treatment.  The RN told him they would not discharge him because they needed to stop the bleeding and do the cat-scan.  After hours at the hospital, the RN asked Plaintiff again what happened and he told her, "I fell."  (Id. at 11:18.)  The RN documented that all of his injuries came from falling, but she gave Plaintiff a look showing that she knew it was not true and his injuries could not have been sustained from falling one time to the floor.  Plaintiff saw Dr. Sam Shields [not a defendant] who saw Plaintiff's lacerations and abrasions, did the CT-Head Scan on 1/21/18 at 18:00, and applied steri-strips to stop the active bleeding from the left side of Plaintiff's face.  Plaintiff was under so much distress and afraid for his life if he told the truth at the hospital, so he lied about his injuries.  If he had told the truth Plaintiff might not have lost the hearing in his left ear caused by defendant Hernandez kicking him.  Due to Hernandez kicking him Plaintiff cannot hear anymore and that's permanent damage that will affect him for the rest of his life, and has already affected his relationship with his family.  Every time Plaintiff sees his scars in the mirror he is reminded of the beating.  The officers told the medical staff that Plaintiff was suicidal and homicidal, so he was placed on suicide watch.  A few days later, on his birthday, Plaintiff attempted suicide by overdosing on pills which was the result of defendants Bryan and Hernandez embarrassing and humiliating him by pulling down his pants and underwear in front of females and other inmates.
///

The officers' and staff's view was not restricted by distance and was not casual in nature or justified.

### Claim #3 – Due Process, Fabricated Reports, and Cover-Up

Due to the incident, Plaintiff was issued a serious CDCR-115 Division A1 for Battery on a peace officer resulting in serious bodily injury and was referred to the Kern County D.A.'s Office in order to cover up the attack that was inflicted on Plaintiff. Each correctional officer wrote an incident report and filed it. Every report was the same and every officer's incident time was 14:01. How is it possible for everything to happen at 14:01, and for all of the officers to coincide with each other?

Plaintiff did not ask to postpone his hearing pending the outcome of referral for prosecution, but he requested an Investigative Employee (IE). On February 2, 2018, Plaintiff had his RVR-115 hearing before hearing officer Lieutenant (Lt.) C. Waddle [not a defendant]. Plaintiff informed Lt. Waddle that his IE told him he was not allowed to send questions to Officers Stevens, Villegas, and Solis. Plaintiff also told the Lt. that he asked his IE about questioning the psych-tech who watched over Plaintiff when he was on suicide watch, to whom Plaintiff had spoken when he returned from the hospital, and the IE said no. Lt. Waddle told Plaintiff it's too late for all that now and the Lt. would not allow Plaintiff to come back or request that questions to be asked and answered, per Department Guideline and Rules. This ensured that Plaintiff would have no recourse or defense when the DA picked up the case.

The Kern County D.A. filed a case on September 20, 2018 for 3 counts of PC4501.5>2012, 1 count of PC4573.6, and 1 count of PC135-M. Plaintiff was not given the right to question witnesses. He lost 360 days of good time credits and 180 days of visiting privileges, lost A.1.A status, was given higher points, placed in Administrative Segregation, and given a 30-month SHU term. Plaintiff was not granted a hearing or afforded procedural safeguards.

### Relief

Plaintiff requests compensatory and punitive damages and costs of suit.

///

### IV.    PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp.,

637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A. Excessive Force

What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

The court finds that Plaintiff states cognizable claims in the First Amended Complaint against defendants Correctional Officers Rose Stevens, Ivan Villegas, Jordan Bryan, and Alen Hernandez for use of excessive force in violation of the Eighth Amendment.

### B. Bodily Privacy – Fourth Amendment

The Fourth Amendment applies to the invasion of bodily privacy in prisons. Bull v. City & County of San Francisco, 595 F.3d 964, 974-75 (9th Cir. 2010) (en banc). The Ninth Circuit has recognized that "incarcerated prisoners retain a limited right to bodily privacy." Michenfelder v. Sumner, 860 F.2d 328, 333 (9th Cir. 1988). "Shielding one's unclothed figure from the view of strangers, particularly strangers of the opposite sex is impelled by elementary self-respect and personal dignity." Id.

The Ninth Circuit's law respects an incarcerated prisoner's right to bodily privacy, but has found that assigned positions of female guards that require only infrequent and casual observation, or observation at distance, and that are reasonably related to prison needs are not so degrading as to warrant court interference. Grummett v. Rushen, 779 F.2d at 494–95. See also Bagley v. Watson, 579 F.Supp. 1099, 1103 (D.Or. 1983); Smith v. Chrans, 629 F.Supp. 606 (C.D.Ill. 1986); Johnson v. Frauenheim, No. 1:18-cv-01477-AWI-BAM (PC), 2019 WL 5260447, at *13 (E.D. Cal. Oct. 17, 2019) (finding prisoner failed to allege a cognizable Fourth Amendment claim based on allegations that the prisoner was ordered to take his boxers off while a female officer was able to view the prisoner's body search).

Plaintiff claims that by having to walk naked roughly 40-50 feet to the C-yard patio to wash himself with a garden hose he was forced to expose himself to females and other inmates. (Id. at 9:12-15, 21-22; 10:2-3.) Plaintiff's allegations suggesting that this violates his right to privacy fail to state a Fourth Amendment claim. The allegations are limited to a single incident, and Plaintiff admits that his clothing was taken as evidence. (Id. at 4.)

The court finds that Plaintiff fails to state a cognizable claim in the First Amended Complaint for invasion of bodily privacy in violation of the Fourth Amendment.

///

### C. Due Process – Fourteenth Amendment

Plaintiff alleges that he was not granted a hearing, procedural safeguards, or the opportunity to question witnesses, and that he lost 360 days of good-time credits, lost 180 days

of visiting privileges, lost A1A status, was given higher points, was placed in ASU, and was given a 30-month SHU term.

The Due Process Clause protects against the deprivation of liberty without due process of law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Id. Liberty interests may arise from the Due Process Clause itself or from state law. Id. Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995). Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

### 1. ASU and SHU Terms

The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. See Hewitt v. Helms, 459 U.S. 460, 466-68 (1983); see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted). However, in Toussaint, the Ninth Circuit held that California's prison regulations which govern the removal and segregation decision, do not create a liberty interest. Toussaint v. McCarthy, 801 F.2d 1080, 1097–98 9th Cir. 1986). Such regulations are procedural requirements that, even if mandatory, do not raise a constitutionally cognizable liberty interest. Id. at 1098.

A plaintiff must assert a "dramatic departure" from the standard conditions of confinement before due process concerns are implicated. Sandin, 515 U.S. at 485–86, 115 S.Ct. 2293. Plaintiff's complaint does not contain any factual allegations to demonstrate that the conditions he was subjected to while he was housed in administrative segregation imposed an atypical or significant hardship on him in relation to the ordinary incidents of prison life. Therefore, Plaintiff fails to state a due process claim for his confinement in the ASU or SHU.

### 2. Loss of Good Time Credits[1]

When a prisoner challenges the legality or duration of his custody, or raises a constitutional challenge which could entitle him to an earlier release, his sole federal remedy is a writ of habeas corpus. Preiser v. Rodriguez, 411 U.S. 475 (1973); Young v. Kenny, 907 F.2d 874 (9th Cir. 1990), cert. denied 11 S.Ct. 1090 (1991). Moreover, when seeking damages for an allegedly unconstitutional conviction or imprisonment, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Heck v. Humphrey, 512 U.S. 477, 487-88 (1994). "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 488. This "favorable termination" requirement has been extended to actions under § 1983 that, if successful, would imply the invalidity of prison administrative decisions which result in a forfeiture of good-time credits. Edwards v. Balisok, 520 U.S. 641, 643–647 (1997).

Plaintiff's First Amended Complaint does not contain any allegations to show that Plaintiff's finding of guilt which resulted in his forfeiture of 360 days good time credits has been reversed, expunged, declared invalid, or called into question by a writ of habeas corpus. Thus, Plaintiff is barred by Heck and Edwards from pursuing any claims under § 1983 concerning the process he was provided which resulted in the forfeiture of good time credits.

---

[1] Plaintiff also complains that he was subject to an increase in points. To the extent that Plaintiff is referring to an increase in criminal history points, a challenge to such points is a challenge to his conviction and therefore his sole federal remedy is a writ of habeas corpus.

### 3. Loss of Privileges and Earning Status

Plaintiff alleges that he lost 180 days of visiting privileges and his A-1/A earning status. The Supreme Court has concluded that the Due Process Clause itself does not grant prisoners a liberty interest in not losing privileges, Baxter v. Palmigiano, 425 U.S. 308, 322, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). Therefore, Plaintiff is not entitled to any procedural due process protections for his loss of visiting privileges.

Moreover, Plaintiff has no established liberty interest in his A–1/A earning status. Murillo v. Flournoy, No. 11CV1687-BEN BGS, 2013 WL 773472, at *18 (S.D. Cal. Jan. 30, 2013), report and recommendation adopted, No. 11CV1687 BEN BGS, 2013 WL 773470 (S.D. Cal. Feb. 27, 2013), modified, No. 11CV1687 BEN BGS, 2013 WL 1147628 (S.D. Cal. Mar. 19, 2013), and report and recommendation adopted, No. 11CV1687 BEN BGS, 2013 WL 1147628 (S.D. Cal. Mar. 19, 2013). Prisoners have no liberty interest in their prison classification nor in a specific job. See Moody, 429 U.S. at 88 n. 9; Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir.1998); Duffy v. Riveland, 98 F.3d 447, 457 (9th Cir.1996); Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir.1987). The prison regulations further provide that work group privileges may be denied, modified or suspended as a result of disciplinary action. Cal.Code Regs., tit. 15 § 3044(c)(2).

Because Plaintiff has neither a liberty interest nor a property interest in his prison job or visitation privileges, his Plaintiff's allegations fail to give rise to a due process claim with regard to the loss of his A–1/A earning status or loss of visitation privileges.

### 4. Fabricated Reports and Cover-up

There is no due process right to be free from false disciplinary charges. The falsification of a disciplinary report does not state a standalone constitutional claim. Canovas v. California Dept. of Corrections, 2:14–cv–2004 KJN P, 2014 WL 5699750, n.2 (E.D. Cal. 2014); see e.g., Lee v. Whitten, 2:12–cv–2104 GEB KJN P, 2012 WL 4468420, *4 (E.D. Cal. 2012). There is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). "Specifically, the

fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free decision-making." Jones v. Woodward, 2015 WL 1014257, *2 (E.D. Cal. 2015) (citing Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994).

To the extent that Plaintiff attempts to raise a cover-up claim, it is premature. Allegations that officials engaged in a cover-up state a constitutional claim only if the cover-up deprived a plaintiff of his right of access to courts by causing him to fail to obtain redress for the constitutional violation that was the subject of the cover-up. Dell v. Espinoza, No. 116CV1769MJSPC, 2017 WL 531893, at *6–7 (E.D. Cal. Feb. 7, 2017) (citing see Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 625 (9th Cir. 1988) (cover-up "allegations may state a federally cognizable claim provided that defendants' actions can be causally connected to a failure to succeed in the present lawsuit.")); Rose v. City of Los Angeles, 814 F. Supp. 878, 881 (C.D. Cal. 1993). A cover-up claim is premature when, as here, Plaintiff's action seeking redress for the underlying constitutional violations remains pending. See Karim-Panahi, 839 F.2d at 625 (claim alleging police cover-up of misconduct was premature when action challenging misconduct was pending); Rose, 814 F. Supp. at 881 ("Because the ultimate resolution of the present suit remains in doubt, [p]laintiff's cover-up claim is not ripe for judicial consideration.") Therefore, Plaintiff fails to state a due process claim for false reports against him or a cover up.

### 5. Conclusion

Based on the foregoing, Plaintiff fails to state a claim in the First Amended Complaint for denial of his rights to due process.

### D. Retaliation

The Ninth Circuit Court of Appeals has held that, within the prison context, a First Amendment retaliation claim has five essential elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) would chill or silence a person of ordinary firmness from future First Amendment activities, and (5) the action did not reasonably advance a legitimate correctional goal. Ahmed v. Ringler, No. 2:13-CV-1050 MCE DAD, 2015 WL 502855, at *3 (E.D. Cal. Feb.

5, 2015), <u>report and recommendation adopted,</u> No. 2:13-CV-1050 MCE DAD, 2015 WL 1119675 (E.D. Cal. Mar. 11, 2015) (citing <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567–68 (9th Cir. 2005); <u>see</u> <u>also</u> <u>Watison v. Carter</u>, 668 F.3d 1108, 1115 (9th Cir. 2012)).

In this case, Plaintiff alleges that Defendants Stevens, Villegas, Bryan, and Hernandez warned him that he would be subject to bodily harm if he told the truth about his injuries from Defendants beating him up. (First Amend. Comp., ECF No. 13 at 5, 9:3-10, 11:2-3,5-6.) Defendants' warnings about what would happen to him constitute "adverse actions," satisfying the first element of a retaliation claim. See <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269–70 (9th Cir. 2009) ("the mere *threat* of harm can be adverse action").

Plaintiff's allegations that Defendants threatened him with physical harm if he reported Defendants' misconduct satisfies the second and third elements of a retaliation claim, which require Plaintiff to allege that the adverse action taken against him was "because of" his "protected conduct." <u>Uribe v. McKesson</u>, No. 08–cv–1285 SMS, 2011 WL 9640 at *12 (E.D.Cal. Jan.3, 2011) (prisoner's attempt to report a prison official's misconduct, either "verbally or in writing, constitutes speech or conduct entitled to First Amendment protection.").

As to the fourth element, Plaintiff alleges that he "was under so much distress and afraid for my life about telling the truth at the outside hospital – from (KVSP) officers, so I did what C/O Stevens and C/O Villegas told me to do and I lied." (<u>Id.</u> at 11:24-27.) The court finds that plaintiff has adequately alleged a "chilling effect" because he alleges he was threatened with more than minimal harm. The fact that Defendants' alleged retaliatory conduct did not chill the plaintiff from suing the Defendants does not defeat his retaliation claim at the [screening] stage. See <u>Watison</u>, 668 F.3d at 1114; <u>see</u> <u>Rhodes</u>, 408 F.3d at 568 ("at the pleading stage, we have *never* required a litigant, *per impossible,* to demonstrate a *total* chilling of his First Amendment rights . . . to perfect a retaliation claim.") (emphasis in original).

Finally, as to the fifth element, which requires plaintiff to allege that Defendants' conduct did not "advance a legitimate correctional goal," Plaintiff alleges that Defendants "failed to report and react appropriately in a professional manner, instead they acted maliciously and sadistically, very outrageously and carelessly." (First Amend. Comp. at 7:15-18.) The court therefore finds

that the allegations in Plaintiff's First Amended Complaint allow the court to reasonably infer that Defendants' conduct did not serve a legitimate correctional goal. Ahmed, 2015 WL 502855, at *5 (citing see Watison, 668 F.3d at 1114–15 ("A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious . . . or that they were unnecessary to the maintenance of order in the institution.'")).

Based on the foregoing, the court finds that Plaintiff states claims in the First Amended Complaint against defendants Correctional Officers Rose Stevens, Ivan Villegas, Jordan Bryan, and Alen Hernandez for retaliation in violation of the First Amendment.

## V.   RECOMMENDATIONS AND CONCLUSION

For the reasons set forth above, the court finds that Plaintiff states cognizable claims for use of excessive force in violation of the Eighth Amendment, and for retaliation in violation of the First Amendment, against defendants Correctional Officers Rose Stevens, Ivan Villegas, Jordan Bryan, and Alen Hernandez, but no other claims against any of the Defendants.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires."  Here, the court previously granted Plaintiff leave to amend the complaint, with ample guidance by the court, and Plaintiff now states only excessive force and retaliation claims against defendants Correctional Officers Rose Stevens, Ivan Villegas, Jordan Bryan, and Alen Hernandez.  The court is persuaded that Plaintiff is unable to allege any facts, based upon the circumstances he challenges, that would state any other cognizable claim under section 1983.  "A district court may deny leave to amend when amendment would be futile."  Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013).  The court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted.  28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

///

///

Accordingly, **IT IS HEREBY RECOMMENDED** that:

1. This case proceed against defendants Correctional Officers Rose Stevens, Ivan

      Villegas, Jordan Bryan, and Alen Hernandez for use of excessive force in violation of the Eighth Amendment, and retaliation in violation of the First Amendment;

2. All other claims be dismissed from this action based on Plaintiff's failure to state a claim;

3. Plaintiff's claims for violation of due process and invasion of bodily privacy be dismissed from this action based on Plaintiff's failure to state a claim; and

4. This case be referred back to the Magistrate Judge for further proceedings, including initiation of service of process.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). **Within fourteen days** of the date of service of these findings and recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 26, 2021**              **/s/ Gary S. Austin**
                                                      UNITED STATES MAGISTRATE JUDGE