UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARBI KAMALI,<br><br>             Plaintiff,<br><br>    vs.<br><br>STEVENS, et al.,<br><br>             Defendants. | **1:19-cv-01432-JLT-GSA-PC**<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS BE DENIED**<br><br>**(ECF No. 37.)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

## I.    BACKGROUND

Arbi Kamali ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983 filed on December 2, 2019.  (ECF No. 1.)  This case now proceeds with Plaintiff's First Amended Complaint (FAC) filed on February 27, 2021, on Plaintiff's claims for retaliation and excessive force against defendant Correctional Officers Rose Stevens, Ivan Villegas, Jordan Bryan, and Alen Hernandez ("Defendants"). (ECF No. 13.) More specifically, the First Amended Complaint alleges that on January 21, 2018, Defendants attacked Plaintiff using excessive force against him, and then retaliating against Plaintiff by warning him that he would be subject to bodily harm if he told the truth about his injuries from Defendants beating him up.

On January 24, 2022, Defendants filed a motion for judgment on the pleadings. (ECF No. 37.) On February 27, 2022, Plaintiff filed an opposition to the motion. (ECF No. 40.) On February 16, 2022, Defendants filed a reply to the opposition. (ECF No. 43.) In the motion Defendants argue that Plaintiff's claims are barred by the favorable termination rule set forth in Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641, 643–647 (1997). Defendants provide evidence that Plaintiff was found guilty at a prison disciplinary hearing for battery on officers causing serious injury based on the January 21, 2018 incident at issue in this case, and as a result Plaintiff lost 360 days of behavioral credits. Plaintiff argues that Heck is not applicable because he filed his § 1983 complaint before the Kern County District Attorney's Office dismissed the Criminal Complaint against him. For the reasons outlined more fully below, it shall be recommended that the District Court deny Defendants' motion for judgment on the pleadings.

## II.   PLAINTIFF'S ALLEGATIONS AND CLAIMS

Plaintiff is currently incarcerated at California Correctional Center in Tehachapi, California. The events at issue in the FAC allegedly occurred at Kern Valley State Prison (KVSP) when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR).

A summary of Plaintiff's allegations of excessive force and retaliation, upon which this case proceeds, follow.

### Claim #1 – Excessive Force

On January 21, 2018, at KVSP's C-Visiting processing area at 14:01 hours after visits were over, defendant C/O R. Stevens asked Plaintiff to be x-rayed so he could be sent back to his housing. When the x-ray was done, C/O M. Solis [not a defendant] asked Plaintiff to get on the wall for a pat-down, but Plaintiff got down on the floor with his arms under his chest. The next thing Plaintiff felt was C/O M. Solis and defendant C/O Ivan Villegas jump on his back. Each of them grabbed one of Plaintiff's arms and tried to put him in handcuffs. Out of nowhere, defendant C/O Stevens started kicking Plaintiff in the head/forehead, then got on her [Stevens's] knees and started punching Plaintiff in the face. Immediately, Defendant C/O Villegas withdrew his metal

baton and started hitting Plaintiff on the right side of the back of his head eight to ten times. C/O Solis was on Plaintiff's back on the left side and Plaintiff heard Solis tell Defendants Stevens and Villegas to stop, it's enough. Then everything went dark and Plaintiff lost consciousness.

When Plaintiff came to he was in the corner of the visiting area, defendant C/O J. Bryan was slapping him, and Plaintiff was in tight handcuffs and leg restraints. When he opened his eyes and saw who was slapping him, Plaintiff told him to stop. Out of nowhere, defendant C/O Bryan's slaps turned into punches and defendant C/O Hernandez punched Plaintiff in the face. They continued beating Plaintiff and yelled at him saying, "Stop resisting." (First Amend Comp, ECF No. 13 at 4.) Plaintiff yelled back, "I'm not resisting, I'm in handcuffs." (Id. at 4, 6.) Then defendant Bryan picked Plaintiff up and slammed him head first into the floor of the C-Visiting area right in front of the x-ray.

Plaintiff was on his stomach and started to bleed all over the floor. Defendant Hernandez walked up to him and gave him three to four kicks to the left side of his face and ear, penetrating his ear. Plaintiff lost his hearing and could no longer hear out of his left ear. He felt a pop in his ear and started bleeding all over the floor from the left side of his face and mouth. Defendant Bryan started laughing. Plaintiff heard an officer tell Defendant Villegas to push the alarm, but make sure you spray him first. Defendant Stevens walked up to Plaintiff's head, lifted it and sprayed his face and the alarm went off.

A group of officers responded, including ISU (Investigative Service Unit) B. Long [not a defendant], who asked defendant Stevens, "Did you call the front gate to stop inmate Kamali's family from leaving the prison grounds?" (Id. at 6:17-19.) Stevens responded that when she called, the family had left. Visiting hours at KVSP start at 8:30am and end at 14:00pm. It takes visitors 20 minutes to arrive inside the visiting room from the front gate and over 20 minutes to leave the prison grounds. If the time of the incident – 14.01 -- is correct, Plaintiff's family would still be on prison grounds. Sergeant S. Herrera [not a defendant] instructed Defendants Bryan and Hernandez to take Plaintiff to Medical, and the medical staff ordered that he be taken to TTA for further evaluation due to his injuries. At TTA Medical, medical staff ordered Plaintiff to be taken

to an outside hospital, Delano Regional Medical Center (DRMC), for a CT-Head Scan after which he was sent back to KVSP.

On January 25, 2018, Plaintiff's birthday, he attempted suicide by overdosing on pills and was taken in an ambulance back to DRMC. His suicide attempt was caused, in part, by the embarrassment and humiliation he felt at having his pants and underwear pulled down by defendants Bryan and Hernandez in front of female staff and other inmates. Defendants failed to report Plaintiff's injuries or the blood on the floor. Instead, they acted maliciously and sadistically, outrageously, and carelessly. The injuries Plaintiff suffered by the Defendants – cut, laceration, active bleeding, abrasion, reddened area, left cauliflower ear, and loss of hearing – could not have been sustained from M. Solis and defendant Villegas taking him to the ground one time, as they said in their Incident Reports. The beating Plaintiff received for up to fifteen minutes was very sadistic, and the pictures of Plaintiff's forehead and left ear, and the amount of Plaintiff's blood on the floor speaks the truth and establishes that his injuries came from excessive force by the Defendants. The lack of detail and lies in Defendants' Incident Reports were only for the D.A. to see their side only and pick up the case. The Superior Court did file a felony complaint against Plaintiff on September 20, 2018. What was done to Plaintiff by all of the Defendants was wrong and very excessive.

**Claim #2 - Retaliation**

Plaintiff alleges that Defendants Stevens, Villegas, Bryan, and Hernandez warned him that he would be subject to bodily harm if he told the truth about his injuries from Defendants beating him up. (FAC, ECF No. 13 at 5, 9:3-10, 11:2-3,5-6.)  Plaintiff also alleges that he "was under so much distress and afraid for my life about telling the truth at the outside hospital – from (KVSP) officers, so I did what C/O Stevens and C/O Villegas told me to do and I lied." (Id. at 11:24-27.) In addition, Plaintiff alleges that Defendants "failed to report and react appropriately in a professional manner, instead they acted maliciously and sadistically, very outrageously and carelessly." (Id. at 7:15-18.)

**Relief Requested**

Plaintiff seeks as relief monetary damages, including punitive damages, costs of suit, and attorney's fees.

///

## III. LEGAL STANDARDS

### A. Motion for Judgment on the Pleadings

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. Ventress v. Japan Airlines, 603 F.3d 676, 681 (9th Cir. 2010) (quoting Fajardo v. County of L.A., 179 F.3d 698, 699 (9th Cir. 1999)). The court must assume the truthfulness of the material facts alleged in the complaint, Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1053 (9th Cir. 2011), and "treat as false the allegations in the answer that contradict" the complaint, Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 955 (9th Cir. 2004). All inferences reasonably drawn from these facts must be construed in favor of the responding party. General Conference Corp. of Seventh–Day Adventists v. Seventh Day Adventist Congregation Church, 887 F.2d 228, 230 (9th Cir. 1989).

The legal standard that governs a Rule 12(c) motion is the same as that which governs a Rule 12(b)(6) motion. Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 540, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Manzarek v. St. Paul Fire &

5

Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Secs. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008)

If matters outside the pleadings are considered, the motion shall be treated as one for summary judgment. Fed. R. Civ. P. 12(c). A district court may, however, "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice - without converting the motion to dismiss [or motion for judgment on the pleadings] into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003); see also Summit Media LLC v. City of Los Angeles, 530 F.Supp.2d 1084, 1096 (C.D.Cal. 2008).

### B.     Heck v. Humphrey and Edwards v. Balisok

The exclusive method for challenging the fact or duration of Plaintiff's confinement is by filing a petition for a writ of habeas corpus. Wilkinson v. Dotson, 544 U.S. 74, 78 (2005). See 28 U.S.C. § 2254(a). Under Heck v. Humphrey, 512 U.S. 477 (1994), an inmate cannot bring a § 1983 action if a judgment in the inmate's favor would necessarily imply the invalidity of a conviction or sentence. Nor may Plaintiff seek to invalidate the fact or duration of his confinement indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody. Wilkinson, 544 U.S. at 81. Where a §1983 claim for excessive force alleges that an officer had no justification in employing "any force," and the findings of the disciplinary hearing shows otherwise, that § 1983 claim should be barred. See Hooper v. County of San Diego, 629 F.3d 1127, 1132 (9th Cir. 2011) (emphasis in original) (internal quotation marks and citation omitted).

Moreover, when seeking damages for an allegedly unconstitutional conviction or imprisonment, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Heck, 512 U.S. at 487- 88. "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under

§ 1983." Id. at 488.  In other words, "if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which Section 1983 damages are sought, the 1983 action must be dismissed." Smithart v. Towery, 79 F.3d 951, 952 (1996).  This "favorable termination" requirement has been extended to actions under § 1983 that, if successful, would imply the invalidity of prison administrative decisions which result in a forfeiture of good-time credits. Balisok, 520 U.S. at 643–647.

**IV.    REQUEST FOR JUDICIAL NOTICE**

"Courts may only take judicial notice of adjudicative facts that are not subject to reasonable dispute." Ritchie, 342 F.3d at 908-09 (citing Fed. R. Evid. 201(b)).  "Facts are indisputable, and thus subject to judicial notice, only if they either 'generally known' . . . or capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned[.]" Id. at 909.  Judicial notice by a court is mandatory if requested by a party "and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

The content of records and reports of administrative bodies are proper subjects for judicial notice under Rule 201(d). Interstate Natural Gas Co. v. S. Cal. Gas Co., 209 F.2d 380, 385 (9th Cir. 1953).  A court may also take judicial notice of the contents of public records. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).  Judicial notice is also appropriately taken of the official records of the California Department of Corrections and Rehabilitation. Brown v. Valoff, 422 F.3d 926, 931 n.7 (9th Cir. 2004).

The Court may also judicially notice the records and filing of other court proceedings. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Bennett v. Medtronic, Inc., 285 F.3d 801, 802 n.2 (9th Cir. 2002).  In particular, we "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir.1992); see also Smith v. Duncan, 297 F.3d 809, 815 (9th Cir. 2002) (taking judicial notice of the "relevant state court documents, because those documents have a direct relationship to [petitioner's habeas] appeal"), abrogation on other grounds recognized by Moreno v. Harrison, 245 Fed.Appx. 606 (9th Cir. 2007).

Defendants Hernandez, Villegas, Stevens, and Bryan request the Court to take judicial notice of the following documents under Federal Rule of Evidence 201, in support of Defendants' motion for judgment on the pleadings. (ECF No. 37-1, Exhs. A & B.) Defendants request that the Court take judicial notice of the existence and content, although not the truth of any matters asserted, of the following records and documents not subject to reasonable dispute:

> **Exhibit A**: A true and correct copy of the California Department of Corrections and Rehabilitation's disciplinary Rules Violation Report Log. No. 000000004271824 issued to Plaintiff Arbi Kamali for battery on officers causing serious injury on correctional staff at Kern Valley State Prison (KVSP). This document concerns the January 21, 2018 incident at issue in this case. Also included are the related disciplinary hearing and guilty determination documents. A custodian-of-records certification for these documents is included with this exhibit.

(ECF No. 37-1, Exh. A.)

> **Exhibit B**: A true and correct filed-endorsed copy of the "CDCR Short Report" filed in the Superior of Court of California, County of Kern, dated August 10, 2018, showing that Plaintiff has been sentenced to a determinate prison term. This document was filed in the Superior of Court of California, County of Kern, and is part of that Court's records. In addition, Exhibit B contains a true and correct copy of a filed endorsed Order Amending Abstract of Judgment filed in the Superior of Court of California, County of San Luis Obispo, dated June 27, 2017, a PreSentence Report of Probation Officer filed in the Superior of Court of California, County of San Luis Obispo, dated January 6, 2014, and an Abstract of Judgment – Prison Commitment Determinate filed in the Superior of Court of California, County of Los Angeles, dated April 28, 2011. A custodian-of-records certification for these documents is included with this exhibit.

(ECF No. 37-1, Exh. B.)

Federal courts have recognized that RVRs fall within the category of public records subject to judicial notice. See, e.g., Jones v. Harrington, No. 1:10-CV-00212-AWI-GSA, 2010 WL 3341597, at *1 (E.D. Cal. Aug. 24, 2010) (taking judicial notice of RVR in habeas proceeding); Givens v. Miller, No. 15CV2877-GPC(PCL), 2017 WL 840658, at *2 (S.D. Cal. Mar. 3, 2017) (taking judicial notice of two dispositions of disciplinary hearings for two separate RVRs), aff'd, 708 F. App'x 354 (9th Cir. 2017). Taking judicial notice of an RVR does not, however, mean that the factual allegations contained in an RVR are deemed to be true. To the contrary, a court cannot generally take judicial notice of the underlying "factual findings of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it." M/V Am. Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir.1983); see also Wyatt v. Terhune, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003) ("Factual findings in one case ordinarily are not admissible for their truth in another case through judicial notice"), overruled on other grounds, Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014); Taylor v. Charter Medical Corp., 162 F.3d 827, 829–31 (5th Cir. 1998) (court could not take judicial notice of another court's finding that a defendant was a state actor; the determination was a legal conclusion rather than an adjudicative fact and in any event was not beyond reasonable dispute).

Here, the Court may take judicial notice of the RVR as to only the charge of which Plaintiff was found guilty in the RVR (Battery Causing Serious Injury), the victims of that charge (Defendants), and the punishment imposed as a result of the guilty finding (including the loss of 360 behavioral credits). (ECF No. 20-1 at 2, 12, 16.) The Court may not, however, take judicial notice of, and construe as true, the factual allegations contained in the RVR as those factual allegations are in dispute. See Wyatt, 315 F.3d at 1114 n.5 ("[F]actual findings in one case ordinarily are not admissible for their truth in another case through judicial notice."); see also Lee, 250 F.3d at 690 (although the court can take judicial notice of undisputed matters of public record, the court cannot take judicial notice of disputed facts stated in public records), Rivera v. Hamlet, No. C03-962 SI (PR), 2003 WL 22846114, at *5 & n.2 (N.D. Cal. Nov. 25, 2003) ("If the court cannot take judicial notice of a factual finding in other court cases, it certainly cannot

take judicial notice of a factual finding in the less procedurally rigid prison disciplinary hearing.").

Accordingly, the Court recommends granting the request for judicial notice of the RVR only as to the charge of which Plaintiff was found guilty, the victims of that charge (Defendants), and the punishment imposed, and otherwise denying judicial notice of the RVR and particularly denying the request for judicial notice of the factual allegations contained in the RVR.

Under Federal Rule of Evidence 201, a court may take judicial notice of undisputed matters of public record, Lee, 250 F.3d at 689, including documents on file in federal or state courts. See Bennett, 285 F.3d at 803 n.2. Here, Plaintiff has not denied the authenticity of the documents filed in Superior Court of California, Kern County, denied that he was sentenced to a determinate prison term, or denied that he was found guilty of disciplinary charges at the prison relevant to the case at hand. Consequently, the court takes judicial notice of these documents submitted by Defendants, which are part of the record from the CDCR and Plaintiff's underlying state court matters. All of these documents are matters of public record whose authenticity is not disputed, and the court will take judicial notice of them.[1] The Court takes judicial notice of the existence and content, although not the truth of any matters asserted in the documents.

**V.   DISCUSSION**

Defendants argue that they are entitled to judgment on the pleadings because Plaintiff's claims are barred by the favorable termination rule, also known as the Heck bar, because Plaintiff's claims in the complaint are inconsistent with the guilty finding resulting from his prison disciplinary proceeding in which he was found guilty of battery causing serious injury and lost 360 days of behavioral credits.

Plaintiff argues that the Heck rule is not applicable to this matter because he filed his § 1983 complaint before the Kern County District Attorney's Office dismissed the Criminal Complaint against him, and there are triable issues that can be tried by a jury. Plaintiff also asks

---

[1] Inmate records are considered public in the United States and therefore are made available by both traditional governmental agencies as well as third-party websites and organizations. California.staterecords.org/inmate (last visited on August 3, 2022).

the Court to sanction Defendants by striking their answer, to address the administrative appeal process, and to review Plaintiff's discovery requests that Defendants have not responded to.[2]

Under the "incorporation by reference" doctrine, a District Court ruling on a motion to dismiss or a motion for judgment on the pleadings may consider a document if the plaintiff's claim depends on the contents of the document and the document is either alleged in or attached to the complaint and no party contests the authenticity of the document. Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). Here, to rule on Defendants' motion for judgment on the pleadings the Court must consider the Rules Violation Report (RVR) that is mentioned in and attached to Defendants' Request for Judicial Notice, (ECF No. 37-1, Exh. A). Plaintiff has not contested the authenticity of the RVR.

The RVR prepared by Sergeant J. Jimenez states as follows:[3]

> On January 21, 2018, at approximately 1401 hours, Correctional Officer I. Villegas working as Facility C visiting officer #3, he was assisting in processing the inmates back to Faculty C after visiting hours were completed. Utilizing the Low Dose Body Scanner Correctional Officer R. Stevens had detected a foreign object near the buttocks area of inmate Kamali's, AH0208 FCB1-124L Correctional Officer R. Stevens requested Correctional Officer M. Solis to review the Low Dose Body scanner to confirm what she had observed. Solis asked Kamali to step down from the low dose Body Scanner and to prepare for a clothed body search. Villegas observed Kamali become nervous and reach his hands into the back side of his pants and pull his hands out. Solis and Villegas grabbed his arms as he turned around simultaneously bringing his hands up to his chest. Villegas could see something in his hands as he took a step towards the restroom and began swinging his elbows side to side and Villegas stated he believed the inmate was trying to get to the restroom to destroy what was in his hands. The Officers used their combined weight to take the inmate to the ground. Villegas landed on his Knees and left wrist breaking helping to break the fall. Villegas pressed his Personal Alarm Device and continued to try and gain control of the inmate. The inmate was still throwing his elbows from side to side and struck Villegas on the lower left side of his mouth. Kamali had broken open the contraband and appeared to be trying to swallow it and scatter it everywhere. The white powder like substance got in the mouth of Villegas as he struggled to maintain his grasp on the inmate. Officer Stevens said "I'm going to spray you,"

---

[2] In their reply to Plaintiff's opposition to the motion for judgment on the pleadings, Defendants argue that Plaintiff's request to sanction Defendants by striking their answer, Plaintiff's request for the Court to review Plaintiff's discovery requests, and Plaintiff's discussion about the prison appeal process are not before the Court in the matter of Defendants' motion for judgment on the pleadings, because they are not relevant to the motion. (See ECF No. 43.) The Court concurs and shall not address these issues in these findings and recommendations.

[3] The RVR is presented here as written. Any spelling or grammar errors are in the original RVR.

       and sprayed the inmate in the facial area. It did not have the desired effect but it did cause the inmate to begin spitting out the white powdery substance he was trying to swallow. Facility C responding staff arrived and the inmate was restrained. Villegas was taken to the Triage and Treatment Center and medically evaluated. A 7219 Medical Report of Injury Form was completed noting injuries to Officer Villegas Left Wrist, Both knees, and that he had swallowed an unknown narcotic substance. Investigative Services Unit Officer B. Long arrived and took photographs of the injuries and the white powdery substance on all injured and affected staff. All staff exposed to the Narcotic Powder were given a temporary change of clothes and transported to an Outside Facility for Medical evaluation of there injuries and Exposure to Controlled substance incured during this incident.

       Officer Long notified me that he tested the suspected narcotics using a Narcotics Identification Kit (NIK) and it was presumptive positive for Methamphetamine with a total weight of 37.4 grams. Inmate Kamali's actions caused for Officer Villegas, Officer Solis and Officer Stevens to be exposed to Methamphetamine. Officer Villegas was exposed to the face and some of the narcotics was able to get into his mouth. Officer Stevens was exposed to the narcotics due to the fine powder from the Methamphetamine in the air, causing her to inhale the narcotics. Officer Solis was exposed to the narcotics due to the fine powder from the Methamphetamine in the air, causing him to inhale the narcotics. This Report was authored by Sergeant Jimenez PERN #1

       It was later discovered On January 25, 2018, that Correctional Officer R. Stevens sustained a fractured wrist during the altercation with Inmate Kamaili.

(ECF No. 37-1 at 6.)

The document entitled "Disciplinary Hearing Results" states that a hearing was held on February 10, 2018; the hearing officer concluded the evidence supported a guilty finding on the charge of violation of CCR 3005(d)(1) Battery Causing Serious Injury; and as a result of the hearing officer's findings, Plaintiff lost 360 days of good time credits and 90 days of visiting privileges.

(ECF No. 37-1 at 11-19.)

Defendants argue that there was no "break" between Plaintiff's criminal activity and Defendants' response that would cause a finding that Plaintiff's excessive force claims can coexist with his conviction for Battery Causing Serious Injury. In Hooper, 629 F.3d at 1134, the Ninth Circuit held that excessive force claims can coexist with convictions for resisting arrest where there is a "break" between the Plaintiff's criminal activity and the officer's response. In Hooper, Heck did not apply because although the chain of events constituting the plaintiff's arrest was "one continuous transaction" for purposes of a resisting-arrest conviction under state law, the conviction and the excessive-force claim were based on different actions because of a

"break" during that transaction. (Id.)  Likewise in this case, according to Plaintiff there was a distinct "break" after Plaintiff's criminal activity because Plaintiff alleges that after the initial altercation with Defendants,  Plaintiff then **lost consciousness** and when he came to he was in tight handcuffs and all of the following then occurred:  Defendant C/O J. Bryan was slapping him, which turned into punches; C/O Hernandez punched Plaintiff in the face; C/O Bryan slammed Plaintiff headfirst into the floor; Defendant Hernandez then walked up to him and gave him three to four kicks to the left side of his face and ear, penetrating his ear.  As a result,  Plaintiff claims that he lost his hearing and started bleeding all over the floor from the left side of his face and mouth.  Finally at the end, Plaintiff alleges  Defendant Stevens walked up to Plaintiff's head, lifted it and sprayed his face with OC pepper spray.

Taking the allegations in the complaint as true, which the court must, after a "break" in the transaction when Plaintiff states he lost and then regained consciousness, the second incident of excessive force began, all of  which Plaintiff claims  was no longer needed or necessary.  Therefore, the Court finds Plaintiff's claims of excessive force used by Defendants after the above described "break" are not barred by Heck. (Importantly see, Ayala v. Salazar 2021 US Dist. Lexis 7557).

In sum, based on the foregoing, it is this Court's view that a finding of excessive force and retaliation would not necessarily imply or demonstrate the invalidity of Plaintiff's disciplinary conviction, or his loss of 360 days of behavioral credits, and thus this case is not barred by the favorable termination rule set forth by the Supreme Court in Heck and Balisok. Therefore, it shall be recommended that Defendants' motion for judgment on the pleadings be denied.

**VI.   CONCLUSION AND RECOMMENDATIONS**

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' motion for judgment on the pleadings, filed on January 24, 2022, be DENIED; and
2. This case be referred back to the Magistrate Judge for further proceedings, including the issuance of a new scheduling order.

      These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  **Within fourteen (14) days** after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed **within ten (10) days** after the objections are filed.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

    Dated:  **August 9, 2022**                           **/s/ Gary S. Austin**
                                                                     UNITED STATES MAGISTRATE JUDGE