UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARBI KAMALI,<br><br>        Plaintiff,<br><br>   vs.<br><br>STEVENS, et al.,<br><br>        Defendants. | **Case No.: 1:19-cv-01432-JLT-GSA (PC)**<br><br>**ORDER ADOPTING FINDINGS AND RECOMMENDATIONS IN PART**<br>**(Doc. 49.)**<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br>**(Doc. 37.)** |

Defendant moved for judgment on the pleadings, arguing that Plaintiff's claims were barred by the favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). (Doc. 37.) The Magistrate Judge recommended that the motion be denied. (Doc. 49.) Defendants filed objections to the findings and recommendations. (Doc. 50.)

In accordance with the provisions of 28 U.S.C. § 636 (b)(1)(B) and Local Rule 304, this court has conducted a *de novo* review of this case. Having carefully reviewed the entire file, including Defendants' objections, the Court finds the findings and recommendations to be supported by the record and proper analysis, although the Court agrees with Defendants' alternative objection that any claims premised upon Plaintiff's initial altercation with Defendants Villegas and Solis are barred by *Heck*.

In their objections, Defendants argue that the magistrate judge did not directly address the

*Heck*-bar issue of whether success on the Plaintiff's present claims would necessarily imply or demonstrate that Plaintiff's guilty conviction in a prison disciplinary hearing was invalid. (Doc. 50 at 2.) The findings and recommendations conclude that Plaintiff's allegations could support a conclusion that there was a distinct "break" in the events surrounding Plaintiff's disciplinary infraction. (Doc. 49 at 13.) Specifically, the magistrate judge reasoned:

> In *Hooper [v. County of San Diego]*, 629 F.3d [1127,] 1132 [(9th Cir. 2011)], the Ninth Circuit held that excessive force claims can coexist with convictions for resisting arrest where there is a "break" between the Plaintiff's criminal activity and the officer's response. In *Hooper*, *Heck* did not apply because although the chain of events constituting the plaintiff's arrest was "one continuous transaction" for purposes of a resisting-arrest conviction under state law, the conviction and the excessive-force claim were based on different actions because of a "break" during that transaction. (*Id.*) Likewise in this case, according to Plaintiff there was a distinct "break" after Plaintiff's criminal activity because Plaintiff alleges that after the initial altercation with Defendants, Plaintiff then lost consciousness and when he came to he was in tight handcuffs and all of the following then occurred: Defendant C/O J. Bryan was slapping him, which turned into punches; C/O Hernandez punched Plaintiff in the face; C/O Bryan slammed Plaintiff headfirst into the floor; Defendant Hernandez then walked up to him and gave him three to four kicks to the left side of his face and ear, penetrating his ear. As a result, Plaintiff claims that he lost his hearing and started bleeding all over the floor from the left side of his face and mouth. Finally at the end, Plaintiff alleges Defendant Stevens walked up to Plaintiff's head, lifted it and sprayed his face with OC pepper spray.

*Id.*

Defendants object to these findings, arguing that the magistrate judge did not properly examine the record to determine which acts necessarily formed the basis for the disciplinary conviction. (Doc. 50 at 2–3.) Defendants are correct that the Ninth Circuit's recent decision in *Lemos v. Cnty. of Sonoma*, 40 F.4th 1002, 1006 (9th Cir. 2022), confirmed that "[t]o decide whether success on a section 1983 claim would necessarily imply the invalidity of a conviction," a court "must determine which acts formed the basis for the conviction." *Id.* When, as in this case, the conviction is based upon findings made by a jury (i.e., a finder of fact), "a court must look at the record of the criminal case—including the jury instructions—to determine which facts the jury necessarily found." *Id.* *Lemos* reiterated that "[a]n action under section 1983 is barred if—but only if—success in the action would undermine the jury's findings in a way that 'would necessarily imply or demonstrate that the plaintiff's earlier

conviction was invalid.'" (*Id*. (citing *Smith v. City of Hemet*, 394 F.3d 689, 699 (9th Cir. 2005) (en banc).)

In this case, Plaintiff was charged in a Rules Violation Report of violating Rule 3005(d)(1) of Title 15 of the California Code of Regulations, which prohibits inmates from committing assault and battery. Specifically, Plaintiff was charged with "Battery Causing Serious Injury" in connection with an incident that took place on January 21, 2018. (Doc. 37-1, Ex. A. at AGO 167.) Plaintiff was found "Guilty as Charged based on a preponderance of evidence." (*Id*. at AGO 171.)

A judge of this Court has previously noted "the fact that Plaintiff battered a correctional officer and refused orders from a correctional officer does not offer a blank check for use of force by correctional officers." *Stevenson v. Holland*, No. 1:16-CV-01831-AWI-SKO, 2018 WL 1109707, at *8 (E.D. Cal. Mar. 1, 2018). An earlier ruling in *Stevenson* provided a cogent summary of cases applying *Heck* and *Holland* where an inmate has been convicted of battering a corrections officer.

> A prisoner cannot challenge the fact or duration of his sentence by way of a Section 1983 claim. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). . . .
>
> On the other hand, where the facts underlying the disciplinary conviction and the facts alleged in the Section 1983 action are separate incidents—i.e., the prisoner assaulted a correctional officer necessitating the use of force, then after the force was no longer necessary, the officer used force in retaliation—*Heck* does not operate as a bar. *See Nettles v. Grounds*, 830 F.3d 922, 928-929 (9th Cir. 2016) (en banc). Challenges to disciplinary proceedings are only barred by *Heck* if the Section 1983 action "would be seeking a judgment at odds with . . . the State's calculation of time to be served" or the validity of the disciplinary conviction. *Id*. at 929. . . .
>
> [W]here a complaint alleges a continuous chain of events with two separate factual predicates—the first, acts by the prisoner leading to the prisoner's rules violation under California Code of Regulations title 15, section 3005(d)(1) for battery, and the second, acts of excessive force in response to the prisoner's conduct by the officer—*Heck* would not operate as a bar. *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005); *Cunningham v. Gates*, 312 F.3d 1148, 1153-54 (9th Cir. 2002); *Hernandez v. Holman*, 2017 U.S. Dist. LEXIS 94202, *13 (C.D. Cal. June 19, 2017) (citing *Brown v. Holland*, 2014 WL 1339687, *4 (N.D. Cal. Mar. 28, 2014)). Such was the case in *Brown v. Holland*, 2014 WL 1339687, where a RVR was issued based on the prisoner's battery of a police officer and a Section 1983 excessive force claim was maintained based on the officer's allegedly excessive response to that battery. The plaintiff in *Brown* proceeded on the theory that, assuming the validity of the battery conviction, the responsive use of force was excessive.

*Hernandez v. Holman*, 2017 U.S. Dist. LEXIS 94202, presents the opposite situation—the RVR and the alleged excessive force arise from the same factual premise. In *Hernandez*, the prisoner-plaintiff alleged that he made a rude comment to a correctional officer and the correctional officer physically attacked the plaintiff as a result. *Hernandez*, 2017 U.S. Dist. LEXIS 94202, *14. The plaintiff argued that the RVR was false and issued only to cover up the correctional officer's use of excessive force. *Id*. However, the RVR indicated that the "[p]laintiff made essentially the same rude comment to [the correctional officer] ...; [the p]laintiff challenged [the correctional officer] to a fight; [the correctional officer] told [the p]laintiff to relax ...; [the p]laintiff tried to pull away, lunged, head-butted [the correctional officer] ... and attempted to kick [him]." *Id*. at *13-14. The correctional officer then forced the plaintiff to the ground and attempted to control the plaintiff while the plaintiff attempted to fight back. *Id*. at *14. The court explained that the complaint was premised on the theory that any use of force was excessive because the plaintiff was innocent of the rules violation for which he was convicted since he did not commit battery. *Id*. The events alleged in the Section 1983 complaint and the events in the RVR were wholly inconsistent such that a finding in the plaintiff's favor would necessarily imply the invalidity of the RVR conviction. *Id*. For that reason, the plaintiff's Section 1983 complaint was barred by *Heck*.

*Stevenson v. Holland*, No. 1:16-CV-01831-AWI-SKO, 2017 WL 2958731, at *7–8 (E.D. Cal. July 11, 2017).

Defendants suggest that a review of the records of the disciplinary proceedings against Plaintiff demonstrates that Plaintiff's disciplinary conviction is incompatible with the present allegations in this case. First, Defendants point to a document entitled Disciplinary Hearing Results, which reflects the outcome of the due process hearing that took place on February 10, 2018. (Doc. 37-1, Ex. A at AGO 167–76.) Defendants appear to focus on a lengthy section of this form entitled "Evidence," which states that "[t]he following evidence was used to support the findings" made by the finder of fact:

> 1. CDCR Rule Violation Report, authored by Sergeant J. Jiminez which states, in part, "On January 21, 2018, at approximately 1401.hours. Correctional Officer I. Villegas working as Facility C visiting officer #3, he was assisting in processing the inmates back to Faculty C after visiting hours were completed. Utilizing the Low Dose Body Scanner Correctional Officer R. Stevens had detected a foreign object near the buttocks area of inmate Kamali's, AH0208 FCB1-124L. Correctional Officer R. Stevens requested Correctional Officer M. Solis to review the Low Dose Body scanner to confirm what she had observed. Solis asked Kamali to step down from the low dose Body Scanner and to prepare for a clothed body search. Villegas observed Kamali become nervous and reach his hands into the back side of his pants and pull his hands out. Solis and Villegas grabbed his arms as he turned around simultaneously bringing his hands up to his chest. Villegas could see something in his hands as he took a step towards the restroom and began swinging his elbows side to side and Villegas stated he believed the inmate was trying to get to the restroom to destroy what was in his hands. The Officers used their combined weight to take the inmate to the ground. Villegas

4

landed on his Knees and left wrist breaking helping to break the fall. Villegas pressed his Personal Alarm Device and continued to try and gain control of the inmate. The inmate was still throwing his elbows from side to side and struck Villegas on the lower left side of his mouth. Kamali had broken open the contraband and appeared to be trying to swallow it and scatter it everywhere. The white powder like substance got in the mouth of Villegas as he struggled to maintain his grasp on the inmate. Officer Stevens said "I'm going to spray you," and sprayed the inmate in the facial area. It did not have the desired effect but it did cause the inmate to begin spitting out the white powdery substance he was trying to swallow. Facility C responding staff arrived and the inmate was restrained. Villegas was taken to the Triage and Treatment Center and medically evaluated. A 7219 Medical Report of Injury Form was completed noting injuries to Officer Villegas Left Wrist, Both knees, and that he had swallowed an unknown narcotic substance. Investigative Services Unit Officer B. Long arrived and took photographs of the injuries and the white powdery subs[ta]nce on all injured and affected staff. All staff exposed to the Narcotic Powder were given a temporary change of clothes and transported to an Outside Facility for Medical evaluation of there injuries and Exposure to Controlled substance incur[r]ed during this incident.

Officer Long notified me that he tested the suspected narcotics using a Narcotics Identification Kit (NIK) and it was presumptive positive for Methamphetamine with a total weight of 37.4 grams. Inmate Kamali's actions caused for Officer Villegas, Officer Solis and Officer Stevens to be exposed to Methamphetamine. Officer Villegas was exposed to the face and some of the narcotics was able to get into his mouth. Officer Stevens was exposed to the narcotics due to the fine powder from the Methamphetamine in the air, causing her to inhale the narcotics. Officer Solis was exposed to the narcotics due to the fine powder from the Methamphetamine in the air, causing him to inhale the narcotics. It was later discovered On January 25, 2018, that Correctional Officer R. Stevens sustained a fractured wrist during the altercation with Inmate Kamaili."

2. CDCR-837C Crime Incident Report, authored by Officer R. Stevens, which states, in part, "I observed Kamali tearing the blue bindles apart while thrashing back and forth striking my partners with his elbows and exposing my partners and the air to the white powder. I observed Kamali eating the white powder trying to destroy the evidence. I placed my body between my partners and placed my right knee on the inmate's back and said, "stop resisting. I'm going to spray you." Fearing that Kamali was putting his own life in danger injesting large amounts of presumed controlled substance, I sprayed Kamali in the facial area from approximately 2 feet away with an approximate 2 second burst of OC pepper spray from my MK9 to stop his actions. I moved to the left side of Kamali's body and reached down with my left hand to gain control of Kamali's head but he continued thrashing with his whole body and caused my hand and thumb to be bent back which caused me great pain. I attempted to return to work on Thursday, January 25, 2018, and left early due to pain in my left wrist. I contacted return to work prior to leaving and was instructed to go straight to the Workers Compensation Doctor. It was discovered at this time that I had a fractured left wrist.

3. Inmate Kamali pled not guilty to the charge but failed to provide any evidence to refute the charge. Further, Inmate Kamali refused to explain how he was covered in OC pepper spray the day of this incident or how Officer Stevens sustained a fractured wrist.

Based on the totality of the above stated information, I feel a reasonable person would find sufficient evidence to support a guilty finding of the charge.

1  (Doc. 37-1 at AGO 172.)  Because the conclusion indicates that "[b]ased on a totality of the
2  circumstances, I feel a reasonable person would find sufficient evidence to support a guilty finding of
3  the charge," (*id*.), the Court does not read the preceding "summary of the evidence" section as an
4  explicit finding by the factfinder that all the events described therein were necessary to the finding of
5  guilt.  *Lemos* nonetheless indicates that the Court should independently examine the entire record of
6  the underlying disciplinary case to determine "which facts the [finder of fact] necessarily found."  40
7  F.4th at 1006.
8       Defendants contend that the finding of guilt necessarily required the following factual findings:
9  that Plaintiff was the aggressor and intentionally resisted a search, striking Defendants in the process,
10 and showering them with narcotics; Defendants forced Plaintiff to the floor to take control of the
11 sudden altercation, and that Plaintiff resisted Defendants' control; and that it took five correctional
12 officers using their body weight to overcome Plaintiff's extreme resistance so that they could get him
13 in handcuffs and leg restraints.  (Doc. 50 at 3 (citing Doc. 37-1, Ex. A at AGO 172).)  Defendants fail
14 to explain why any of these purported factual "findings" were necessarily required as part of the
15 ultimate finding that Plaintiff committed a battery on a correctional officer causing serious injury.
16 Rather, as was the case in *Hooper*, the record here is "silent on which act or acts formed the basis of
17 [the rules violation] conviction." *See Sanders v. City of Pittsburg*, 14 F.4th 968, 971 (9th Cir. 2021)
18 (discussing *Hooper*, 629 F.3d at 1132–33.)  Viewing the facts in a light most favorable to the Plaintiff,
19 as the Court must, the conviction here could be premised, for example, only on the finding that
20 Plaintiff resisted the body search, struck at least one Defendant in the process and, during that initial
21 altercation between Plaintiff and Defendants Villegas and Solis, Defendant Villegas broke his wrist.
22 Under such a scenario, the Court can divide the incident into "separate 'factual contexts,'" and *Heck*
23 would be "no impediment" to any allegations of excessive force premised upon actions that can be
24 separated from those necessarily linked to the conviction.  *See id*. (citing *Hooper*, 629 F.3d at 1132–
25 33).  This is, in effect, what the magistrate judge was getting at.  As the findings and recommendations
26 explain, after the initial altercation between Plaintiff and Defendants Villegas and Solis, Plaintiff
27 alleges he lost consciousness; that when he awoke, he was in tight handcuffs; and that various other
28 Defendants (C/O J. Bryan and C/O Hernandez) proceeded severely beat Plaintiff and eventually pepper

sprayed him. A finding that the Defendants applied excessive force after the initial encounter between Plaintiff and Defendants Villegas and Solis would not tend to invalidate the disciplinary conviction for battering a corrections officer causing serious injury.

The Court is not moved by Defendants' assertion that there was no "break" in the interaction between Defendants and Plaintiff and that, instead, "Plaintiff continued resisting up until the point where he was restrained with leg restraints and handcuffs; after Plaintiff stopped resisting, there was no further use of force and he was escorted to medical for evaluation." (Doc. 50 at 3–4.) In support of this assertion, Defendants cite an amended incident report concerning the events of January 21, 2018, which they have requested the Court judicially notice. (*See id*. at 4 (citing Doc. 37-1, Ex. A at AGO 181).) Defendants fail to explain why the contents of the report is proper matter for judicial notice, and, again, have failed to demonstrate that Plaintiff's disciplinary conviction necessarily required the asserted findings. To the contrary, as mentioned, viewing the facts in a light most favorable to Plaintiff, it appears that he could have been convicted of battering a corrections officer causing serious injury based upon only his first interaction with Defendants Villegas and Solis.

Defendants' final objection requests, in the alternative, that the Court dismiss any claims that are premised upon "pre-break" conduct and limit Plaintiff's claims to the "post-break" conduct identified in the findings and recommendations. (Doc. 50 at 5.) Defendants are correct that the operative First Amended Complaint is broadly worded and could be read to encompass the entirety of the events that took place on January 21, 2018. (*See* Doc. 13 at 4–5 (generally describing the entire incident as "supporting facts"); *but see id*. at 6 (describing "Claim 1" as being premised upon acts that took place after Plaintiff was handcuffed.) Defendants are correct that *Heck* bars any claims premised upon factual allegations that if accepted in this case would necessarily undermine the validity of the disciplinary conviction. Plaintiff was convicted of battery resulting in serious injury. As the Court explained above, the facts suggest that Plaintiff's disciplinary conviction could stand on only the initial altercation between Plaintiff and Defendants Villegas and Solis. As the findings and recommendations indicated, Plaintiff's own allegations suggest a distinction between the initial altercation (among Plaintiff and Defendants Villegas and Solis) and later acts after Plaintiff allegedly lost consciousness and awoke in handcuffs. The Court agrees with Defendants that Plaintiffs claims may proceed only as

to the "post-break" conduct.  Any claims premised upon earlier acts are barred by *Heck*.  Accordingly, the Court **ORDERS**:

1. The findings and recommendations issued on August 9, 2022, are ADOPTED IN PART.
2. Defendants' motion for judgment on the pleadings, filed on January 24, 2022, is GRANTED as to claims premised upon the initial altercation between Plaintiff and Defendants Villegas and Solis and DENIED in all other respects.
3. This case is referred to the Magistrate Judge for further proceedings.

IT IS SO ORDERED.

Dated:   **September 29, 2022**

UNITED STATES DISTRICT JUDGE